IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    Case No. 3:11-cv-00387-MA

             Plaintiff,                    OPINION AND ORDER

    v.

VARIOUS COINS et al *in rem,*

             Defendants.


S. AMANDA MARSHALL
United States Attorney
District of Oregon
KATHERINE C. LORENZ
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

    Attorney for Plaintiff

MATTHEW A. SCHINDLER
501 Fourth Street #324
Lake Oswego, OR 97034

    Attorney for Claimant


MARSH, Judge

      This case involves a civil *in rem* proceeding to forfeit 85

one-ounce gold coins, 1,411 one-ounce silver coins, eight one-ounce

1 - OPINION AND ORDER

palladium coins, one 100-ounce silver bar, three 10-ounce silver bars, 40 one-ounce silver bars, 10 one-ounce palladium bars (various coins and bars), and $13,750.00 in mutilated U.S. currency seized by federal authorities from the home of James Erik Langston Jr. (Langston Jr.). On March 28, 2011, the government filed a complaint alleging that the defendant coins and currency are subject to forfeiture under 18 U.S.C. §§ 881(a)(6) & 983. Claimant James Huff Langston, Langston Jr.'s father, filed a claim asserting ownership of the various coins and bars seized from his son's home. The court has jurisdiction and venue pursuant to 21 U.S.C. § 881, and 28 U.S.C. §§ 1345, 1355, 1356 & 1395. Currently before the court is the government's motion to strike, or in the alternative, motion for summary judgment (#37). For the reasons that follow, the motion is denied.

## BACKGROUND

In connection with this proceeding, claimant was deposed on May 1, 2012. Claimant testified that he has been a lifelong collector of precious metals, including gold and silver coins and bars. Claimant described that his family has a history of mining and collecting, and that his grandfather acquired rights to a gold mine in the 1920s. Declaration of Katherine C. Lorenz (#38), Ex. A, Deposition of James Huff Langston (Langston Depo.), at 131-32. Claimant described that he acquired most of his collection of precious metals between 1994 and 1997. Id. at 108, 121. Claimant

stated that between 1994 and 1997, he kept his collection in his father's safe on his father's property because he and his wife were in transit. Id. at 121, 127-28. Claimant described that he kept a detailed inventory of what items he stored in his father's safe because his father also had a large amount of gold in the safe, and the inventory discerned what was owned by his father and what was owned by claimant. Id. at 129.

When claimant and his wife moved to Vista, California, claimant took all of his precious metals from his father's safe with him. Id. at 129. In 1999, claimant purchased a safe and had it moved to Langston Jr.'s home in Bend, Oregon, and later moved the safe to his home in Idleyld Park, Oregon. Id. at 34.

In May of 2004, claimant arranged for the safe to be moved from his home to Langston Jr.'s home in Washougal, Washington. Id. at 33. A short time later, claimant personally delivered various precious metals with a then estimated value of $50,000 to Langston Jr.'s home. Id. at 35-36, 42. Claimant gave Langston Jr. the combination to the safe. Claimant did not create an inventory, or make a detailed list of the precious metals he placed in the safe. Id. at 36-37, 41, 53.

At his deposition, claimant stated that he instructed Langston Jr. that the precious metals belonged to claimant, and that his son could have them only in the event of his death. Claimant stated that he was getting older, and wanted Langston Jr. to have access

to some funds without having to go through probate.  Id. at 39-40.
Claimant stated that he wanted Langston Jr. to have access to
sufficient money for Langston Jr.'s business.  Claimant stated that
he put the $50,000 worth of precious metals into the safe at
Langston Jr.'s home so that "he would have something to work with
if I wasn't there to help him and all the money was tied up for a
while.  This is what people do with this sort of wealth."  Id. at
45.

Claimant also described that in June of 2006, he and Langston
Jr. had a falling out over an argument concerning his ex-wife,
Langston Jr.'s mother.  Claimant stated that between June of 2006
and April of 2010, he did not speak to, visit, email, or have any
contact whatsoever with Langston Jr.  Id. at 12-13.  Claimant did
not have any contact with Langston Jr. until April of 2010 when he
was informed by his son's friend that Langston Jr. had been
arrested and that the authorities were searching the son's home.
Id. at 13.

On April 14, 2010, federal agents executed a search warrant at
Langston Jr.'s home.  Federal officials were investigating the
son's alleged drug trafficking activities.  During the search of
Langston Jr.'s home, federal agents seized the various coins, bars
and currency found in two safes and a black pipe.

On March 3, 2011, Langston Jr. pleaded guilty to conspiracy to
possess and distribute marijuana under 21 U.S.C. §§ 841 and 846.

As part of Langston Jr.'s plea agreement, he admitted that the assets seized from his home were the proceeds of his criminal drug trafficking activity and/or were used to facilitate his criminal activity. In the plea agreement, Langston Jr. agreed not to file a claim against the coins, bars and currency, and agreed not to be a witness in support of any claim that claimant might bring.

Currently before me is the government's motion to strike claimant's claim for lack of standing. Alternatively, the government contends that it is entitled to summary judgment because there is no genuine issue of material fact that claimant lacks standing, that the defendant property is forfeitable, and that claimant is not an innocent owner.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The moving party bears the burden of proving the absence of a genuine issue of material fact. U.S. Auto Parts Network, Inc. v. Parts Geek, LLC, 692 F.3d 1009, 1014 (9th Cir. 2012); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). This court reviews the evidence in the light most favorable to the non-moving party, and must draw all reasonable inferences in favor of that party. U.S. Auto Parts Network, 692 F.3d at 1014.

////

5 - OPINION AND ORDER

## DISCUSSION

I.  **Standing to Challenge Forfeiture of the Various Coins and Bars**

A claimant's standing to contest a forfeiture proceeding is a threshold matter that must be resolved before addressing the merits of the asset forfeiture claim.  United States v. Real Property Located at 5208 Los Franciscos Way, Los Angeles, Cal., 385 F.3d 1187, 1191 (9th Cir. 2004).  United States v. One 1985 Cadillac Seville, 866 F.2d 1142, 1148 (9th Cir. 1989).  Pursuant to Rule G(5)(a)(I) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules), any person claiming an interest in property may contest its forfeiture by filing a claim in the court where the forfeiture action is pending.  The government, in turn, may move to strike the claim for lack of standing at any time before trial.  Supplemental Rule G(8)(c)(i)(B).  The motion "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence."  Supplemental Rule G(8)(c)(ii)(B).  A forfeiture claimant must establish both Article III standing and statutory standing.  United States v. $11,500 in U.S. Currency, 797 F.Supp.2d 1092, 1096 (D. Or. 2011).

////

////

## A.  Article III Standing

In order to meet the case or controversy requirement of Article III, a civil forfeiture claimant must establish an injury in fact, a causal connection between the injury and the conduct complained of, and that it is likely the injury will be redressed by a favorable decision.  United States v. $133,420 in U.S. Currency, 672 F.3d 629, 637 (9th Cir. 2012).  Claimants in a civil forfeiture can satisfy standing by establishing they have a "colorable interest" in the property, for example, by showing ownership, possession, control, title, or financial stake.  Id. at 637-38; 5208 Los Franciscos Way, 385 F.3d at 1191.  Whether a claimant has an ownership interest in property is determined under the law of the state in which the interest arose.  5208 Los Franciscos Way, 385 F.3d at 1191.

A civil forfeiture claimant must satisfy the elements of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  Thus, at the motion to dismiss stage, "a claimant's unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing."  $133,420 in U.S. Currency, 672 F.3d at 638; United States v. $999,830.00 in U.S. Currency, 704 F.3d 1042, 1042-43 (9th Cir. 2012)("an unequivocal

assertion of ownership establishes Article III standing" necessary to survive a motion to strike).

In this case, claimant's unequivocal assertion of ownership of the various coins and bars seized from Langston Jr.'s home establishes Article III standing necessary to survive the government's motion to strike his claim.    Accordingly, the government's motion to strike is denied.

However, in order to survive a motion for summary judgment, a claimant asserting an ownership interest in the defendant property must present "some evidence of ownership" beyond a mere assertion. $133,420.00 in U.S. Currency, 672 F.3d at 639.    "[A] claimant's bare assertion of an ownership or possessory interest, in the absence of some other evidence, is not enough to survive a motion for summary judgment."    $133,420.00 in U.S. Currency, 133 F.3d at 638.    For example, a claimant must set forth by affidavit or other evidence specific facts supporting a finding that he possesses an ownership interest or a possessory interest in the property.    Id. at 638-39; United States v. 11290 Wilco Highway, Mount Angel, 2012 WL 5332035, *3 (D. Or. Oct. 29, 2012).    "[A] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."    $133,420.00 in U.S. Currency, 672 F.3d at 638; see also U.S. Auto Parts Network, 692 F.3d at 1014 (noting there must be

evidence from which the jury could reasonably find for the non-moving party).

Viewing the evidence in the light most favorable to claimant, I conclude that claimant has gone beyond a bare assertion of ownership necessary to create Article III standing. In his deposition, claimant explained his family's long history of owning precious metals, and described that Langston Jr. also collected precious metals. Claimant submitted declarations from two business owners that claimant bought and sold quantities of precious metals, and a declaration from his wife providing that she accompanied claimant on some occasions when claimant purchased gold and silver coins and bars. Response to Motion to Strike (#43), Declaration of James Huff Langston (Langston Dec.), Exs. 7-9. Moreover, claimant explained that he purchased the various coins and bars with the proceeds of the sale of a home and business. Langston Dec. Ex. 1. Therefore, claimant has presented some evidence of ownership, and has explained how he acquired ownership of the various coins and bars.

Nevertheless, the government asserts that claimant lacks standing because claimant's delivery of the various coins and bars to his son constituted a gift under Washington law. According to the government, because claimant gave them to his son, he no longer has a valid ownership interest and lacks standing.

Under Washington law, "[t]he requirements for a completed gift are: (1) an intention of the donor to presently give; (2) a subject matter capable of passing by delivery; (3) an actual delivery; and (4) an acceptance by the donee." Sinclair v. Fleischman, 54 Wash. App. 204, 207, 773 P.2d 101 (1989), rev. denied, 113 Wash.2d (1989). "An unexplained transfer of money from a parent to a child raises the presumption that a gift was intended, but this presumption can be overcome by proof that is certain, definite, reliable and convincing, and leaves no reasonable doubt as to the intention of the parties." Buckerfield's Ltd v. B.C. Goose & Duck Farm Ltd., 9 Wash. App. 220, 224, 511 P.2d 1360 (1973). The donor must have a present intention to make a gift. Buckerfield's, 9 Wash. App. at 224. A donor's intent to give, or absence thereof, is an evidentiary issue. Id.; see also Oman v. Yates, 70 Wash.2d 181, 422 P.2d 489 (1967). An incomplete gift confers no right in the donee. Sinclair, 54 Wash App. at 207.

The government argues the following undisputed facts demonstrate that claimant made a gift of the property to Langston Jr.: (1) claimant delivered a safe to his son's home; (2) he personally deposited the various coins and bars into the safe; (3) he provided his son with the combination; (4) he left the property at his son's home for six years; (5) he wanted his son to have it upon his death; (6) he made no inventory of the types, denominations, or quantities of the precious metals he placed into

the safe; and (7) he never attempted to retrieve the property in the six years the property remained with Langston Jr. According to the government, under Washington law, we should presume the delivery of the defendant property to his son was a gift. See, e.g., In re Cunningham's Estate, 19 Wash.2d 589, 592, 143 P.2d 852 (1943)(where there is a close family relationship, a transfer without consideration may be deemed a gift).

In response, claimant argues that because he did not have a present intention to give a gift, but merely wanted to give the various coins and bars to Langston Jr. in the future, the gift was incomplete, and he remains the owner. Claimant repeatedly testified in his deposition that he did not give the various coins and bars to his son, but was simply storing them on his son's property, with instructions that Langston Jr. may access them only upon his death. Langston Depo. at 28-30, 35-36, 45-46. Claimant also stated in his deposition that he was placing the gold at his son's home, at least in part, for safekeeping because he did not want his precious metals all in one location. Langston Depo. at 35-36. And, claimant submitted a declaration from Langston Jr.[1] in which the son provides that claimant instructed him that the precious metals in the safe were only to be accessed in the event

---

[1]Although Langston Jr. has agreed not be a witness or to assist his father in his civil case, the government has not sought to exclude Langston Jr.'s declaration from the court's consideration.

of claimant's death.  Langston Dec. Ex. 4.  Langston Jr. also states that he understood the various coins and bars were not a gift to him, but rather they belonged to his father.  <u>Id.</u> Furthermore, I am not convinced that the absence of an inventory indicates claimant intended a gift because claimant provided a separate safe for storage of the precious metals, and thus was not co-mingling his various coins and bars with those of his son.

Thus, viewing the evidence in the light most favorable to claimant, I conclude that there is a question of fact concerning claimant's donative intent which precludes summary judgment on this issue.  <u>Buckerfield's</u>, 9 Wash. App. at 224.  Whether claimant intended make a gift at the time, or only upon his death, perhaps reserving to himself a life estate or a resulting trust in the defendant property, simply is not clear on the record before me. See <u>Engel v. Breske</u>, 37 Wash.App. 526, 529, 681 P.2d 263, <u>rev. denied</u>, 102 Wash.2d 1025 (1984)(discussing elements of a resulting trust); <u>In re Kirkpatrick's Estate</u>, 140 Wash. 452, 456, 249 P.980 (1926)(discussing donor's intent to create a life estate); <u>see also</u> <u>Linton v. United States</u>, 630 F.3d 1211, 1218-20 (9th Cir. 2011)(discussing donative intent for completion of gift under Washington law and that because different inferences could be drawn, summary judgment was improper).  Accordingly, based upon the totality of the information before me, I conclude that there is a genuine issue of fact as to whether claimant has an ownership

interest in the defendant property sufficient to confer Article III standing.   The government's motion for summary judgment on this basis is denied.

**B.   Statutory Standing**

A claimant seeking to challenge a civil forfeiture must establish both Article III standing *and* statutory standing.   One 1985 Cadillac Seville, 866 F.2d at 1148.   Statutory standing requires that a claimant comply with the procedural requirement of 18 U.S.C. § 983(a)(4)(A) and the procedural requirements of the Supplemental Rules.   $11,500.00 in U.S. Currency, 797 F.Supp.2d at 1097-98.   Supplemental Rule G(5)(i) allows claimants to contest the forfeiture of the defendant property by timely filing a claim which identifies the specific property claimed, identifies the claimant's interest in the property, and must be signed by the claimant under penalty of perjury.   $11,500.00 in U.S. Currency, 797 F.Supp.2d at 1098; United States v. 2003 Volkswagen Passat Washington License Plate 709 YUV, 2011 WL 1576223, *3 (E.D. Wash. Apr. 26, 2011). Strict compliance with the rules is typically required.   $11,500.00 in U.S. Currency, 797 F.Supp.2d at 1098; see also United States v. $487,825.00 in U.S. Currency, 484 F.3d 662, 664-65 (3d Cir. 2007)(noting that strict adherence to the rule forces claimants to come forward quickly and minimizes false claims).   A claimant who fails to file a verified statement lacks statutory standing to

contest the forfeiture.  $487,825.00 in U.S. Currency, 484 F.3d at 665.

The government argues that claimant cannot establish statutory standing because he cannot establish that he is an "owner" under § 983(d)(6).  The government's argument is more properly directed at whether claimant has established a genuine issue of material fact concerning his innocent owner defense.  See $15,000.00 in U.S. Currency, 797 F.Supp.2d at 1098; United States v. $133,420.00 in U.S. Currency, 2010 WL 1433427, *4 (D. Ariz. Apr. 9, 2010)(rejecting argument that claimant must be an "owner" under 19 U.S.C. § 983(d)(1) to have statutory standing), subsequent determination, 2010 WL 2594304 (D. Ariz. June 23, 2010); aff'd, 672 F.3d 629 (9th Cir. 2012).  Moreover, the government has not challenged claimant's compliance with Supplemental Rule G. Accordingly, I conclude that claimant has established statutory standing, and the government's motion to strike, or alternatively, motion for summary judgment on that basis is denied.  See $11,500.00 in U.S. Currency, 797 F.Supp.2d at 1098; see also One Lincoln Navigator, 328 F.3d 1101, 1013 (8th Cir. 2003)(noting that claimant need not prove the merits of case to establish standing; merits included whether he was an "owner" under § 983(d)(6)).

## II. Forfeitability of the Defendant Property

A civil forfeiture operates in rem against the property on the theory that the property itself is guilty of wrongdoing.  United

States v. Nava, 404 F.3d 1119, 1123 (9th Cir. 2005).  In this case, the government seeks forfeiture under 21 U.S.C. § 881(a)(6), which provides for the forfeiture of property used to facilitate drug trafficking and proceeds traceable to drug trafficking.

The government bears the initial burden to establish that the property is subject to forfeiture by a preponderance of the evidence, and that there was a substantial connection between the property and the criminal offense.  18 U.S.C. § 983(c)(3); United States v. Sims, 2012 WL 3822117, *1 (N.D. Cal. Sept. 4, 2012). Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact as to whether the precious metals represent proceeds traceable to an exchange for controlled substances or were used or intended to be used to facilitate illegal drug activity.  $11,500.00 in U.S. Currency, 797 F.Supp.2d at 1101.

The government submits that Langston Jr.'s plea agreement demonstrates that there is no genuine issue of fact that the various coins and bars are forfeitable.  In this case, Langston Jr. signed a plea agreement, admitting to engaging in a conspiracy to possess and distribute marijuana, and voluntarily forfeiting all right, title and interest in all assets subject to forfeiture, and that such assets were proceeds of his criminal activity, and were used to facilitate that criminal activity.  Langston Dec. Ex. 10,

p. 3.    I note that plea agreements are admissible under the residual exception to the hearsay rule.  <u>11290 Wilco Property</u>, 2012 WL 5332035 at *4.

Paragraph 17 of the March 3, 2011 plea agreement signed by Langston Jr. contains the following:

17. **<u>Forfeiture Terms:</u>**

> A.  **<u>Assets and Authority:</u>** By signing this agreement, defendant knowingly and voluntarily forfeits all right, title, and interest in and to all assets subject to forfeiture pursuant to 21 U.S.C. § 853, including the assets listed below which defendant admits constitute the proceeds of defendant's criminal activity, were used to facilitate defendant's criminal activity and were involved in defendant's criminal activity in violation of Title 21, United States Code, Sections 841(a) and 846 as set forth in Count 1 of the indictment.
>
> MONEY JUDGMENT
>
> A forfeiture of $150,000 representing a portion of the proceeds of defendant's criminal activity and/or was used to facilitate defendant's criminal activity and/or was involved in defendant's criminal activity in violation of Title 21, United States Code, Section 841(a)(1) as set forth in the Indictment.
>
> B. **<u>Agreement to Civil Forfeiture:</u>** Defendant agrees not to file a claim or withdraw any claim already filed to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated against the following property. Defendant further waives the right to notice of any forfeiture proceeding involving this property, and agrees not to assist others in filing a claim in any forfeiture proceeding. Further, Defendant explicitly agrees he will

not be a witness in support of any claim his
father, [claimant] will file to the following
property.

PRECIOUS METALS AND CURRENCY

1,451 one once silver coins/bars
83 one ounce gold coins
3 ten ounce silver bars
1 one hundred ounce silver bar
9 one ounce palladium bars/coins
2 one ounce gold coins
Mutilated US currency recovered from
31414 SE 22nd Street, Washougal
Washington

C. **No Alteration or Satisfaction:** . . .
Finally, defendant agrees that he will not
participate as a witness on behalf of his
father in any civil proceeding regarding the
assets set [] forth herein.

Langston Dec. Ex. 10, at 3-4.

Claimant argues that Langston Jr.'s plea agreement does not

identify the precious metals as proceeds of his criminal activity.

Claimant contends that Langston Jr. admitted only that the money

judgment represented proceeds of criminal activity in sub-paragraph

A.   Claimant asserts that because the precious metals were

identified separately in sub-paragraph B, the government has failed

to establish that the precious metals are forfeitable.  I disagree.

A fair reading of the plea agreement as a whole clearly

identifies the defendant property as forfeitable.  It is clear from

the plea agreement Langston Jr. agreed that "all assets subject to

forfeiture" pursuant to 21 U.S.C. § 853 were proceeds or were used

to facilitate Langston Jr.'s criminal activity.   Section 853

provides that *any* property, real or personal, that constitutes proceeds or was used to facilitate criminal activity is subject to forfeiture. 21 U.S.C. §§ 853(a) & (b). Thus, simply because the government is pursuing a civil forfeiture of the defendant property via this proceeding does not alter the fact that the precious metals seized from Langston Jr.'s home are "assets subject to forfeiture" under the statute. Accordingly, I reject claimant's contention that the plea agreement does not contemplate forfeiting the defendant property.

Claimant also argues that he has created an issue of fact as to whether the defendant property is forfeitable because he testified in his deposition that he deposited a quantity of precious metals into the safe, a fact substantiated by Langston Jr.'s affidavit. Claimant highlights that Langston Jr. also collected precious metals, and points to transcripts of jailhouse conversations between Langston Jr. and his mother that the government seized some precious metals belonging to the son, as well as some precious metals belonging to claimant. See Langston Dec., Ex. 10, p. 13-15. Claimant maintains that because the government did not create an inventory of what items were seized from which safes, there is a question of fact as to whether some of the precious metals seized are the same as those deposited by claimant in 2004. In response, the government argues that because claimant did not create an inventory of what he deposited in the

safe in 2004, gave his son the combination to the safe, and had no contact with his son for four years, that claimant has not adequately refuted Langston Jr.'s admission in the plea agreement that the items were proceeds or were used to facilitate the son's illegal activity.  The government contends that without specific evidence that Langston Jr. did not access the safe or use the precious metals that claimant deposited in 2004, summary judgment is appropriate.  I disagree.

Although claimant does not know whether Langston Jr. accessed the precious metals, there is genuine question as to whether some of the precious metals were seized from claimant's safe, and could belong to claimant.  In his jailhouse conversations, Langston Jr. stated that some of the precious metals seized belonged to claimant.  There is evidence before me that the precious metals were seized from at least two safes and a metal pipe on the property.  Langston Dec. (#43), Ex. 5, Affidavit of Lawrence Gloth (Gloth Aff.), p. 8, 11, 16.

Furthermore, the government has not adequately explained how the precious metals are "substantially connected" to Langston Jr.'s criminal offense.  In its briefing before me, the government relies exclusively upon the son's plea agreement for the substantial connection.  However, there is question as to whether some of the precious metals may belong to claimant and whether those specific metals were "substantially connected" to the son's criminal

19 - OPINION AND ORDER

activity. Accordingly, I conclude that there is a question of fact as to whether the defendant property is subject to forfeiture and whether there is a substantial connection between the defendant property and the offense. 21 U.S.C. § 881(a)(6); 18 U.S.C. § 983(c). Cf. Sims, 2012 WL 3822117 at *3 (finding that a plea agreement in which a defendant admitted that the currency was used in connection with drug trafficking, together with verified complaint with a detailed description of how the currency was used and conflicting deposition testimony of defendant established "substantial connection" under § 983(c)(3)). Accordingly, the government's motion for summary judgment on this basis is denied.

## III. **Claimant's Innocent Owner Defense**

Once the government has demonstrated that the property is forfeitable, the burden shifts to claimant to establish that he is an "innocent owner" under 18 U.S.C. § 983(d). Under § 983(d)(1), "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." The claimant bears the burden of proving by a preponderance of the evidence that he is both innocent, § 983(d)(2), and an owner, § 983(d)(3-6). United States v. Ferro, 681 F.3d 1105, 1109 (9th Cir. 2012); United States v. One 1990 Beechcraft, 1900 C Twin Engine Turbo-Prop Aircraft, 619 F.3d 1275, 1278 (11th Cir. 2010). For purposes of this motion, the government does not contest claimant's "innocence" under the statute.

As used in the civil forfeiture statute, an owner is defined as:

> (A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and
>
> (B) does not include –
>
>> (i) a person with only a general unsecured interest in, or claim against, the property or estate of another;
>>
>> (ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or
>>
>> (iii) a nominee who exercises no dominion or control over the property.

18 U.S.C. § 983(d)(6).  Thus, to be an "owner" of property under the statue, a claimant must show that (1) he has a legal interest in the property according to state property law; and (2) is *not* a mere "nominee who exercises no dominion or control over the property."  18 U.S.C. § 983(d)(6)(B)(iii); United States v. $13,000.00 in U.S. Currency, et. al, 858 F.Supp.2d 1194, 1205 (D. Colo. 2012); One 1990 Beechcraft, 619 F.3d at 1278.

In this case, the government asserts that even if claimant retained ownership under Washington law, claimant cannot establish that he is an owner under § 983(d)(6) because the undisputed facts establish that he did not exercise *any* dominion or control over the defendant property for four years preceding its seizure, and thus was merely a "nominee."

Claimant's arguments in response are two-fold: (1) leaving the various coins and bars in his safe in his son's home is akin to a bailment, and (2) he is not a nominee under the statute.

Claimant's first argument is meritless. Claimant argues that placing the various coins and bars inside the safe at his son's home was similar to placing them in a safe deposit box. According to claimant, like placing items in a safe deposit box at the bank, he could retrieve the coins and bars whenever he wanted. However, claimant has failed to establish that there was an express or implied bailment contract. Additionally, under the facts of this case, claimant would be a bailor rather than a bailee, and thus cannot qualify as a bailee with a colorable legal interest under the statute. See 18 U.S.C. § 983(d)(6)(A); accord United States v. 2004 Ferrari 360 Modeno, ___ F.Supp.2d ___, 2012 WL 5395819, *11 (S.D. Tex. Nov. 6, 2012)(rejecting bailment relationship; noting that innocent owner statute protects only bailees); see also United States v. $746,198 in U.S. Currency, more or less, 299 F.Supp.2d 923, 932 (S.D. Iowa 2004)(even if claimant was bailee, had not identified bailor, and could not establish standing to challenge forfeiture).

Turning to claimant's second argument, claimant does not contest that he had no contact with his son or the defendant property for the four years preceding its seizure. Instead, claimant contends that under the statute, he is not a nominee.

Claimant seems to suggest that because he did not acquire his interest in the various coins and bars through a sham or straw transaction, he is not a nominee.

I begin by noting that the statute does not define the term "nominee." The case law interpreting nominal ownership tends to focus on the degree, quality, and genuineness of claimant's dominion or control over the defendant property. One 1990 Beechcraft, 619 F.3d at 1278; $13,000.00 in U.S. Currency, 858 F.Supp.2d at 1205. "[E]xercising *some* dominion or control suffices to prove that a claimant is not a mere nominee." One 1990 Beechcraft, 619 F.3d at 1278 (emphasis in original). The requirement that the claimant have both an ownership interest and dominion or control ensures that "claimants have at least some actual connection to the property in question; they cannot be only bare title holders." Id.

"Where the degree of control is small, or if it is merely cover for the control exercised by the true owner, or there is none, it is tantamount to no dominion or control at all, and divests the claimant of the status of owner." $13,000.00 in U.S. Currency, 858 F.Supp.2d at 1205; 11290 Wilco Highway, 2012 WL 5332035 at *6; United States v. 2000 Toyota Celica, 2005 WL 1502902, *5 (E.D. Wash. June 23, 2005)("[A] titled owner that exercises no dominion or control over the vehicle is only a straw owner and any straw ownership interest is forfeited.").

In the typical "nominal ownership" situation, the court looks behind the formal legal title to determine whether the record title owner is a "strawman" set up to conceal the financial affairs or illegal dealings of someone else. United States v. Carrell, 252 F.3d 1193, 1204 (11th Cir. 2001). See also Braxton v. United States, 858 F.2d 650, 653 n.6 (11th Cir. 1988)(noting that a "nominee" as is commonly used to connote the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer of ownership rights to the nominee).

Here, claimant admits that did not have *any* contact with his son or the defendant property from 2006 until 2010, when the various coins and bars were seized from two separate safes found within Langston Jr.'s home.  Yet, claimant retained the combination to the safe and maintains that he could retrieve the precious metals for his use at any time.  Based on these facts, claimant's dominion and control appears slight, at best.

The government argues that simply by virtue of having little or no dominion or control over the precious metals, claimant is a "nominee" under § 983(d)(6)(B)(iii).  However, I decline to ignore the nature of claimant's property interest.  11290 Wilco Highway, 2012 WL 5332035 at *6.

Here, claimant testified that he moved the various coins and bars to his son's house for three potential reasons: (1) to give

24 – OPINION AND ORDER

his son access to some assets in the event of claimant's death; (2) to avoid probate; and (3) for safekeeping. As discussed above, there is a question of fact as to whether or not this constituted a gift. However, the government has presented no evidence to suggest that claimant's delivery of the precious metals to his son's home was a sham transaction. Cf. United States v. One 2005 Dodge Magnum, 845 F.Supp.2d 1361, 1367-68 (N.D. Ga. 2012)(finding mother nominal owner of car where mother had legal title, but car was driven by son).

Moreover, claimant testified in his deposition that he acquired the coins legally, using proceeds of the sale of a business and house between 1994 and 1997. As noted above, claimant submitted declarations from two business owners providing that claimant occasionally purchased and sold precious metals. And, claimant's wife accompanied him during many trips to purchase various gold and silver coins and bars.

In short, I am not convinced that simply by having minimal or no dominion or control over personal property in the absence of any evidence of a "sham" or mere cover for the true owner, a claimant *ipso facto* becomes a nominee under the statute. While it is undisputed that claimant had no contact with the defendant property for four years preceding its seizure, I conclude that in the circumstances of this case, that fact alone does not make claimant a nominee under § 983(d)(6)(B)(iii), thereby precluding him from

25 - OPINION AND ORDER

proving he is an innocent owner. While claimant has created an issue of fact which precludes summary judgment on his innocent owner defense, the court expresses no opinion as to claimant's likelihood of success in demonstrating that the precious metals he deposited in the safe at his son's home are in fact the same as those seized.

Based on the totality of the facts before me, and viewing the evidence in the light most favorable to claimant, claimant has established a genuine issue of material fact as to whether or not he is a nominee under the statute which precludes summary judgment. Accordingly, the government's motion for summary judgment must be denied.

<u>**CONCLUSION**</u>

Based on the foregoing, the government's Motion to Strike, or in the Alternative, Motion for Summary Judgment (#37) is DENIED.

IT IS SO ORDERED.

DATED this _21_ day of MARCH, 2013.

Malcolm F. Marsh
United States District Judge